hrk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES, FOR THE USE OF )<br>TL ENTERPRISES, INC., )<br>a Kansas Corporation, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ENCON INTERNATIONAL, INC., )<br>a Texas Corporation, and )<br>LINDA GARRAHAN, Individual Surety, )<br>)<br>Defendants. )<br>_____) | Case No. 09-cv-4131-JAR |

## MEMORANDUM AND ORDER

Plaintiff, the United States, filed this action pursuant to 40 U.S.C. § 270b for the use of TL Enterprises, Inc., ("TL"), against defendant Encon International, Inc. ("Encon") for breach of contract and quantum meruit, and against defendant Linda Garrahan for payment on a bond under the Miller Act, 40 U.S.C. § 270. This matter is now before the Court on defendant Encon's Motion to Stay the Proceedings (Doc. 12) and compel arbitration per the terms of the parties' "Subcontract Agreement." Plaintiff TL opposes the motion. For the reasons explained below, the Court grants defendant's motion.

**I.    Background**

On November 1, 2008, Encon was awarded a prime contract by the United States Environmental Protection Agency ("EPA") for the remediation of mine waste. As required by the Miller Act, 40 U.S.C. § 3131, *et seq.*, Encon provided a bond to the United States to secure the payment of mechanics and materialmen under the prime contract. Linda Garrahan of 1st

Capital Lending Trust serves as the surety for that bond. On January 21, 2009, TL entered into a subcontract with Encon for the performance of certain portions of the work required by Encon's prime contract with EPA. Thereafter, TL provided piping to Encon and leased to Encon various pieces of dirt moving equipment so that Encon could perform a portion of the mine waste remediation. Thereafter, a dispute arose between the TL and Encon, and the subcontract and equipment leases were terminated.

On September 21, 2009, TL filed a demand for arbitration with the American Arbitration Association, which is presently pending. On September 22, 2009, TL filed a Complaint in the present case. Subsequently, TL filed an Amended Complaint against Encon and Encon's surety, Linda Garrahan. On November 30, 2009, Encon voluntarily dismissed its suit in the United States District Court for the Western District of Texas, Case No. EP-09-cv-279, which was originally commenced by Encon against TL in an effort to compel arbitration.

Encon argues that its business relationship with TL is covered by a Subcontract Agreement, which includes a binding arbitration agreement. TL argues that there were two agreements between TL and Encon that must be considered: a subcontract and various equipment leases. While the Subcontract includes an arbitration provision, the equipment leases do not. TL has not provided a copy of any of the equipment leases in its response. The arbitration provision in the Subcontract Agreement states as follows:

> 1. **SCOPE OF WORK**
>
> The work to be performed by SUBCONTRACTOR under the terms of this Agreement consists of furnishing all labor, materials, tools, implements, equipment, permits fees, etc. to do all of the work identified in the "Scope of Work" and Attachments to this Agreement.

. . .

      **6.**    **CLAIMS AND DISPUTES, MANDATORY BINDING ARBITRATION**

. . .

MANDATORY AND BINDING ARBITRATION AGREEMENT: In the event of any dispute between ENCON and SUBCONTRACTOR arising under or relating to this Agreement, the dispute shall be settled by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect, unless the parties agree otherwise.

The parties agree that there will be no recourse to trial or appeal courts, except as may be allowed by law, and that their exclusive recourse and remedy is ARBITRATION. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law of the State of Texas. SUBCONTRACTOR agrees to carry on the Work under this Agreement and maintain satisfactory progress while any claim or dispute is being resolved.[1]

**II.**    **Standard**

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[2] "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."[3] If the contract between the parties is binding, then the court must "examine 'the scope of that agreement and then determine whether [plaintiff's]

---

[1] Doc. 13, Ex. B, "Subcontract Agreement."

[2] 9 U.S.C. § 2.

[3] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

claims fall within its scope.'"[4] To determine whether a particular dispute falls within the scope of a particular arbitration clause, the court applies a three-step inquiry:

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.[5]

To determine the breadth of an arbitration clause the court must "ask if 'the parties clearly manifested an intent to narrowly limit arbitration to specific disputes' that might arise between them."[6] This approach protects the parties' freedom of contract "so that parties are not required to submit to arbitration any dispute which [they have] not agreed to so submit."[7] Nevertheless, the court is directed to "resolve doubts concerning the scope of arbitrable issues in favor of arbitration."[8] Finally, section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the

---

[4] *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (citing *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004)).

[5] *Id.* at 1261 (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (emphasis omitted)).

[6] *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1196 (10th Cir. 2009) (quoting *Cummings*, 404 F.3d at 1262).

[7] *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)) (quotation marks omitted).

[8] *Id.* at 1197 (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

> United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.[9]

**III.    Discussion**

The parties do not dispute whether the Subcontract Agreement between them is binding and enforceable. Rather, they dispute whether the arbitration provision in the Subcontract Agreement is broad enough to encompass all claims brought by TL against Encon and Encon's surety in this case. Because the Subcontract Agreement is a "contract evidencing a transaction involving commerce,"[10] the FAA governs this case.[11]

The arbitration provision expressly applies to "any dispute between ENCON and SUBCONTRACTOR arising under or relating to this Agreement." This language makes the arbitration clause quite broad.[12] The provision applies to "any dispute" that might arise between the parties, whether it "aris[es] under" the Agreement, or "relat[es] to" the Agreement. In fact, "relating to" is language with an even broader sweep than "arising out of."[13] Moreover, the

---

[9] 9 U.S.C. § 3.

[10] 9 U.S.C. § 2.

[11] *See U.S. ex rel. Humbarger v. Law Co., Inc.*, No. 01-4156-SAC, 2002 WL 436772 (D. Kan. Feb. 20, 2002) (applying the Federal Arbitration Act to a contract between a general contractor and a subcontractor).

[12] *See B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 229 F. Supp. 2d 1209, 1226 (D. Kan. 2002) (holding that "Any controversy or claim arising out of or related to these Conditions of Sale or any other transaction" was quite broad); *Ketchum v. Almahurst Bloodstock IV*, 685 F. Supp. 786, 791 (D. Kan. 1988) (finding that "arising out of or relating to this agreement" is a broad arbitration clause).

[13] *Chelsea Family Pharmacy, PLLC*, 567 F.3d at 1199 & n.9 ("The ordinary meaning of the phrase 'relating to' is broad.").

5

arbitration provision does not provide for any exclusions.[14]  Rather, the parties agreed that arbitration was to be the "exclusive recourse and remedy" with only one possible exception: "unless the parties agree otherwise."  However, TL has not pointed the Court to any written agreement to the contrary, which might demonstrate the parties' intention to exclude a particular matter from the express terms of the arbitration agreement.

Encon argues that "all labor, material or equipment provided by Plaintiff arose under or was related to Plaintiff's performance of the subcontract."[15]  The Court agrees.  The "Scope of Work" to be performed by the subcontractor under the Subcontract Agreement includes "furnishing all labor, materials, tools, implements, equipment, permits fees, etc."  To the extent TL's equipment leases were provided to enable Encon to perform under the contract, the equipment leases "arise out of" and are directly "related to" the "scope of work" detailed in the Subcontract Agreement.  Consequently, the equipment leases are encompassed within the broad scope of the arbitration provision.

The Court notes that this case involves a claim under the Miller Act against Encon's surety, who was not a party to the Subcontract Agreement between the general contractor and the subcontractor.  Nevertheless, cases involving a dispute between a general contractor and a subcontractor, but which include a Miller Act claim against a surety, are still arbitrable if the contract between the general contractor and the subcontractor includes a broad arbitration

---

[14]*Id.* at 1196 n.4 ("Excluding certain categories of disputes from arbitration is not alone dispositive of whether the clause is broad or narrow, but it is indicative of an agreement to limit arbitration to specific disputes.").

[15](Doc. 23 at 5.)

clause.[16] Another court in this district explained the relationship between contract claims that are arbitrable and contingent claims against a surety:

> [T]he fact that this court cannot require [the surety] to participate in arbitration is no reason not to stay the case. Plaintiff will be contractually bound by the decision of the arbitrators and, if they resolve the dispute in favor of [the general contractor], no Miller Act remedy will likely be necessary. In the event the arbitrators resolve the dispute in plaintiff's favor, plaintiff is adequately protected against the possibility that [the general contractor] may become insolvent and unable to pay an arbitration award in plaintiff's favor by its Miller Act suit still pending in this court against the surety. [17]

Thus, the Court finds it appropriate to stay the case pending outcome of the arbitration.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's Motion to Stay the Proceedings (Doc. 12) is granted, pending outcome of the arbitration proceedings.

**IT IS FURTHER ORDERED BY THE COURT** that the parties shall file a status report with the Court no later than May 14, 2010, informing the Court of the progress of the arbitration.

**IT IS SO ORDERED.**

Dated: March 3, 2010

                                               S/ Julie A. Robinson
                                               JULIE A. ROBINSON
                                               UNITED STATES DISTRICT JUDGE

---

[16] *See, e.g., U.S. ex rel. Humbarger v. Law Co., Inc.*, No. 01-4156-SAC, 2002 WL 436772, at *3 (D. Kan. Feb. 20, 2002); *see also U.S., for and on behalf of Portland Const. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1012 (10th Cir. 1976).

[17] *U.S. ex rel. Humbarger*, 2002 WL 436772, at *4.